# Exhibit A

## NOTE

| | | |
|---|---|---|
| February 5, 1999 | WEST CHESTER | , OH |
| [Date] | [City] | [State] |

592 SONNY LANE
CINCINNATI, OH 45244
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 76,300.00     (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

ENTERPRISE FEDERAL SAVINGS BANK

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of     7.750     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the   1st   day of each month beginning on   April 1   , 1999   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on   March 1, 2029   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

I will make my monthly payments at   7810 TYLERSVILLE SQUARE DRIVE
WEST CHESTER, OH  45069
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 546.62     .

## 4. BORROWER'S RIGHT TO PREPAY

In the event that the undersigned elects to pay the entire principal sum before five years from date hereof, the undersigned shall pay to the holder a one percent (1%) cancellation premium on the principal sum herein.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be    5.000    % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

**MULTISTATE FIXED RATE NOTE** - Single Family - FNMA/FHLMC Uniform Instrument
Form 3200 12/83
Laser Forms (rc. (000) 446-2555
LIFT  ▓▓▓▓▓▓              Page 2 of 3      Initials: _T R_

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
THOMAS R RERING                -Borrower                                  -Borrower

Social Security Number _____        Social Security Number _____

_____ (Seal)        _____ (Seal)
                              -Borrower                                  -Corrower

Social Security Number _____        Social Security Number _____

[Sign Original Only]

SURVIVORSHIP DEED, Statutory Form No. 23-A
(RC Section 5302.17 Eff. 4/4/85)          (Reprinted 6/86)          Registered in U.S. Patent and Trademark Office
anderson publishing co. cincinnati, ohio 45201

# Exhibit B

## Survivorship Deed*

022995

VOL 732 PAGE 688

Bertie A. Duncan, unmarried          ', of Clermont    County,    Ohio

*for valuable consideration paid, grant(s)¹ with general warranty covenants, to*
Thomas R. Rering          and¹    Mary Ann Rering          , husband and wife

*for their joint lives, remainder to the survivor of them, whose tax-mailing addresses are*
592 Sonny Lane, Cincinnati, Ohio 45244

*the following REAL PROPERTY: Situated in the County of*    Clermont          in the State
*of Ohio and in the*    Township    of Union          :'

Situated in Union Township, Clermont County, State of Ohio, and being all of
Lot No. 2 of Mt. Forest Subdivision a plat or plan of which Subdivision is
recorded in Plat Book J, page 26 of the Recorder's Office of Clermont County,
Ohio.

DEC 2 3 1986
APPROVED
FOR TRANSFER
RALPH T. PALMER
COUNTY ENGINEER
CLERMONT COUNTY, O.
BY: _____ ASS'T
TAX MAP DRAFTSMAN

BK. 4₁    PG. 43    PAR. 2

Transferred 12-24-86
James R. Rymer
AUDITOR
By B. Strange

#4072

This Conveyance has been examined and the
Grantor has complied with Section 319.202
of the Revised Code.
FEE $ 55.60
EXEMPT
JAMES R. RYMER, County Auditor

*Prior Instrument Reference:* Book 670 Page 878    *of the Deed Records of*  Clermont
County, Ohio.

Xxxxxxxxxxxxxxxxxxxxxxxxin. Witness    her          hand(s) this          19th          day
of    December          , 19 86

*Signed and acknowledged in presence of:*

William Stanton
Deborah A. Peter

Bertie C. Duncan          .
Bertie A. Duncan

State of Ohio                          County of  Hamilton          ss.
BE IT REMEMBERED, That on this  19th          day of          December    , 19 86  , before me,
*the subscriber, a*    Notary Public          *in and for said state, personally came,*
Bertie A. Duncan          the Grantor(s) in the
*foregoing deed, and acknowledged the signing thereof to be*    her          voluntary act and deed.
IN TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my  notarial    seal

*on the day and year last aforesaid.*

Deborah A. Peter
DEBORAH A. PETER
Notary Public, State of Ohio
My Commission Expires June 17, 1999

*This instrument was prepared by* KEATING, RITCHIE, LYON & NORWINE
A Legal Professional Association

(1) Name of Grantor(s) and marital status.
(2) See Sections 5302.05 and 5302.06 Ohio Revised Code.
(3) Name of Grantees and marital status of each.
(4) Description of land or interest therein, and encumbrances, reservations, and exceptions, taxes and assessments if any.
(5) Delete whichever does not apply.
(6) Execution in accordance with Chapter 5301 Ohio Revised Code.

Auditor's and Recorder's Stamps

*See Section 5302.17 Ohio Revised Code.



VOL 732 PAGE 689

# Survivorship
# Deed

*FROM*

Bertie A. Duncan

*TO*

Thomas R. Rering
and
Mary Ann Rering

0222995

RECEIVED FOR RECORD
KENNETH A. KAHLE SR.
RECORDER
CLERMONT COUNTY
BATAVIA, OHIO
1986 DEC 29 PM 2: 18
VOL ____ PG ____

# Exhibit C

QUIT CLAIM DEED, with release of dower — No. 27.  (Reprinted 12/87)

Registered in U.S. Patent and Trademark Office
anderson publishing co. cincinnati, ohio 45201

# Know All Men by These Presents

BOOK 110 PAGE 166

**That** MARY ANN RERING, a married woman,

*in consideration of* one dollar and other good and valuable considerations

*to* her *in hand paid by* THOMAS RERING, a married man

*whose address is* 592 Sonny Lane, Cincinnati, Ohio  45244

do es *hereby* **Remise, Release and Forever Quit Claim**

*to the said* THOMAS RERING, and his

*heirs and assigns forever, the following described* **Real Estate** *situate in the* Township of

Union *in the County of* Clermont *and State of* Ohio

and being all of Lot No. 2 of Mt. Forest Subdivision a plat on plan of
which subdivision is recorded in Plat Book J. Page 26 of the Recorder's
Office of Clermont County, Ohio

Prior Deed Reference: Vol._____ Page _____ of the
Clermont County, Ohio, Deed Records.

JUL 1 1 1991
APPROVED
FOR TRANSFER
RALPH T. PALMER
COUNTY ENGINEER
CLERMONT COUNTY, O.
BY._____ ASS'T
TAX MAP DRAFTSMAN

BK. 41 PG. 43 PAR. 2

732/488

This Conveyance has been examined and the
Grantor has complied with Section 319.202
of the Revised Code.
FEE $
EXEMPT
GARY G. VOGELGESANG, County Auditor

Transferred
AUDITOR
By

001A#5750   ‡‡‡‡   DEED   $10.00

*and all the* **Estate, Right, Title and Interest** *of the said grantor    in and to said premises;*
**To Have and to hold** *the same, with all the privileges and appurtenances thereunto belonging,*
*to said grantee   , his      heirs and assigns forever.*

**In Witness Whereof,** *the said* MARY ANN RERING

, *who*

*hereby release* s her *right and expectancy of dower in said premises, ha* s *hereunto set*
her *hand   , this* 26th *day of* June *, 1991.*

*Signed and acknowledged in presence of:*

_____
Witness

_____
MARY ANN RERING

C123056

**State of Ohio,**  Clermont                    **County, ss.**     BOOK 110 PAGE 167

On this 26th day of June          1991 , before me, a   Notary Public
in and for said county, personally came  MARY ANN RERING

                              the grantor    in the foregoing deed, and
acknowledged the signing thereof to be  her   voluntary act and deed.

**Witness** my official signature and seal on the day last above mentioned.

Notary Public

MICHAEL M. SCHMIEG, Attorney at Law
NOTARY PUBLIC - STATE OF OHIO
My Commission has no expiration
date, Section 147.03 O.R.C.

This instrument was prepared by   Mark J. Tekulve
                                   Attorney at Law
                                   785 Ohio Pike
                                   Cincinnati, Ohio   45245
                                   (513) 752-0001

RECEIVED FOR RECORD
CAROLYN GREEN
'91 JUL 11 PM 2 30
CLERMONT CO. RECORDER
BATAVIA, OHIO

## Quit Claim Deed

From
MARY ANN RERING

To
THOMAS RERING

Transferred _____ 19

_____ County Auditor.

**State of Ohio,** _____ **County, ss.**

Presented for record on the _____ day
of _____, 19 ____, at
o'clock, ___ M.

Recorded _____ 19

in Deed Book No. _____ Page _____

_____ County Recorder.

# Exhibit D

Instrument Book Vol. Page
9900010370   OR  1186   95

Re: Enterprise Federal Savings Bank
LOAN NO. ■■■■■■■

—————————————— [Space Above This Line For Recording Data] ——————————————

## OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on February 5, 1999  . The mortgagor
is THOMAS R RERING, UNMARRIED

whose address is   592 SONNY LANE
                   CINCINNATI, OH  45244                          ("Borrower").
This Security Instrument is given to
  ENTERPRISE FEDERAL SAVINGS BANK                                          ,
which is organized and existing under the laws of   U.S.A.                , and whose
address is 7810 TYLERSVILLE SQUARE DRIVE
           WEST CHESTER, OH  45069                                ("Lender").
Borrower owes Lender the principal sum of
  Seventy Six Thousand Three Hundred  DOLLARS and Zero CENTS
Dollars (U.S. $ 76,300.00      ). This debt is evidenced by Borrower's note dated the same date as
this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid
earlier, due and payable on   March 1, 2029            . This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note.   For this purpose, Borrower does hereby
mortgage, grant  and convey to  the Lender  the following described  property located  in
  CLERMONT                                                       County, Ohio:
  SEE ATTACHED LEGAL DESCRIPTION - EXHIBIT A

                              9900010370
                              Filed for Record in
                              CLERMONT COUNTY, OH
                              CAROLYN GREEN
                              On 03-10-1999 At 03:31 pm.
                              MTG              42.00
                              Book OR Vol. 1186 Pg.   95 - 103

OHIO - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
Form 3036 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3036 3/96        Page 1 of 7       Initials: *TR*

which has the address of    592 SONNY LANE                    CINCINNATI

                              [Street]                    [City]

Ohio    45244           ("Property Address");

    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender

**OHIO** - Single Family - **Fannie Mae/Freddie Mac Uniform Instrument**
Form 3036 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3036 3/96                    **Page 2 of 7**                    Initials: _____

under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by

**OHIO** - Single Family - **Fannie Mae/Freddie Mac Uniform Instrument**
Form 3036 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3036 3/96          Page 3 of 7          Initials: _TR_

Instrument Book Vol. Page
000001070  OR  1186  98

the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7.  Protection of Lender's Rights in the Property.**  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8.  Mortgage Insurance.**  If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9.  Inspection.**  Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment

**OHIO** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
**Form 3036 9/90**
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3036 3/96            **Page 4 of 7**            Initials: _TR_

or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this

**OHIO** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
Form 3036 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3036 3/96                     **Page 5 of 7**        Initials: _TR_

Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, costs of title evidence.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

**OHIO** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
Form 3036 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3036 3/96          **Page 6 of 7**      Initials:  _TR_

Instrument Book Vol. Page
9900010370  OR  1186  101

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider      ☐ Condominium Rider              ☐ 1-4 Family Rider
☐ Graduated Payment Rider    ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider              ☐ Rate Improvement Rider         ☐ Second Home Rider
☒ Other(s) [specify]    MORTGAGE & NOTE

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses;

_____      _____ (Seal)
Sharon L. Waller                     THOMAS R RERING              -Borrower

_____      _____ (Seal)
Carolyn Beaty                                                    -Borrower

                                     _____ (Seal)
                                                                 -Borrower

                                     _____ (Seal)
                                                                 -Borrower

————————— [Space Below This Line For Acknowledgment] —————————

**STATE OF OHIO,   BUTLER**                              **County ss:**

On this 5th day of  February, 1999 , before me, a Notary Public in and for said County and State, personally appeared  THOMAS R RERING

the individual(s) who executed the foregoing instrument and acknowledged that    HE    did examine and read the same and did sign the foregoing instrument, and that the same is  HIS    free act and deed.

In WITNESS WHEREOF, I have hereto set my hand and official seal.

                    SHARON L. WALLER
        (Seal)      Notary Public, State of Ohio     _____
                    My Commission Expires Feb. 7, 1999  SHARON L WALLER        - Notary Public

My Commission expires:

This Instrument was prepared by:  FRANK G. WOOD, II

**OHIO** - Single Family - **Fannie Mae/Freddie Mac Uniform Instrument**
Form 3036 9/90
Laser Forms Inc. (800) 446-3555
LIFT #FNMA3036 3/96            **Page 7 of 7**

EXHIBIT "A"

Instrument Book Vol. Page
9900010370   OR   1186   102

Situate in the Township of Union, in the County o Clermont and State of Ohio and being
all of Lot No. 2 of Mt. Forest Subdivision a plat on plan of which subdivision is recorded
in Plat Book J, Page 26 of the Recorder's Office of Clermont County.

"For The Purpose Of Indexing Use
Auditors Parcel 41-41-43.002."

Parcel # _____

# Rider to Mortgage and Note

MORTGAGED PREMISES:    592 SONNY LANE
CINCINNATI, OH   45244

Instrument Book Vol. Page
9900010370  OR  1186  103

The following provisions are incorporated by reference into the attached Note and Mortgage as if they had been set forth therein, except that these provisions shall become void and shall have no force or effect if the loan evidenced by the attached Note is purchased by the Federal National Mortgage Association (FNMA) or the Federal Home Loan Mortgage Corporation (FHLMC).

(1)  Upon any default by the maker hereof, in any of the terms of this Note or in the Mortgage which secures this Note for a period of 30 days or more, the holder hereof shall have the right to compute interest on the balance of the indebtedness remaining at a rate of 3% per annum over the rate then in effect and payable monthly until the default shall have been cured and all delinquencies paid.

(2)  If title (either legal or equitable) to the property secured by the attached Note and Mortgage becomes vested in any person or persons, other than the borrower under any condition outlined in paragraph 17 then, Holder may as an additional option to paragraph 17 of the Mortgage securing the Note (or in lieu of the options set forth in paragraph 17) increase the interest rate on the loan secured by the Note and Mortgage by 5% per annum over the then existing rate.

(3)  The borrower hereby agrees and consents to provide to the mortgage holder hereof the following documents annually upon request.  Failure of the borrower(s) to comply with said request will constitute a default of the terms and the conditions of said Note and Mortgage subject to the rate provisions of paragraph one (1) of this rider.

Documents subject to request:
Profit and Loss Statement
Statement of Condition
Current Federal Income Tax (Personal)
Current Federal Income Tax (Corporate)
Schedule of Rents/Occupancy

(4)  **CONSTRUCTION/END LOANS ONLY:**  It is hereby agreed that the undersigned shall pay interest only on the Note for a period of 12 months from the date hereof, or until the construction of the building(s) on the premises described in the Mortgage securing this Note has been completed, whichever period is the lesser, said interest shall be payable monthly.

Signature THOMAS R RERING

Signature

Signature

Signature

February 5, 1999

Date

Laser Forms Inc.  (800) 446-3555
LFI #EFS100  6/98

# Exhibit E

Top intentionally left blank.



**FIFTH THIRD BANK**

Prepared by and Return to:
Fifth Third Mortgage Company
5001 Kingsley Drive
Madisonville Operations Center
MD IMOB19
Cincinnati, OH 45227

Servicer Loan Number: ▇▇▇▇▇

## LOAN MODIFICATION

### *Fixed Rate Loan – Step Rate Modification*

**TWO ORIGINAL LOAN MODIFICATIONS
MUST BE EXECUTED BY THE BORROWER:
ONE ORIGINAL IS TO BE FILED WITH THE NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE THE
SECURITY INSTRUMENT IS RECORDED**

This Loan Modification ("Modification"), entered into effective as of 07/01/2010, between THOMAS R RERING ("Borrower") and Fifth Third Mortgage Company ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), dated 02/05/1999, securing the original principal sum of U.S. $76,300.00, and recorded in _____, at page (s) _____, of the Records of CLERMONT County; OH, which covers the real and any personal property described in the Security Instrument and defined in the Security Instrument as the "Property", located at 592 SONNY LANE, CINCINNATI, OH 45244, the real property described being set forth as follows:

See attached "Exhibit A"

To evidence the election by the Borrower to modify the terms of the Note and Security Instrument in accordance with such election, Borrower and Lender agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    The Borrower is the owner of the Property. Any other Lien against the property has been fully disclosed to the Lender by the Borrower.

2.    As of 07/01/2010, the amount payable under the Note and Security Instrument is U.S. $78,097.68 and the current interest rate is 1.000%.

---

3.    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. The Borrower promises to make monthly payments of principal and interest beginning on 08/01/2010, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The principal and interest payment will initially be U.S. $197.47. Each interest rate change will adjust the monthly payment amount for the duration that interest rate is effective. The interest rate will change as follows:

| | | |
|---|---|---|
| Beginning 7/1/2010, the interest rate will be | 1.000 %. | This will adjust the monthly payment amount. |
| Beginning 7/1/2011, the interest rate will be | 2.000 %. | This will adjust the monthly payment amount. |
| Beginning 7/1/2012, the interest rate will be | 3.500 %. | This will adjust the monthly payment amount. |
| Beginning 7/1/2013, the interest rate will be | 5.000 %. | This will adjust the monthly payment amount. |
| Beginning 7/1/2014, the interest rate will be | 7.750 %. | This will adjust the monthly payment amount. |

4.    An installment of $5,481.00 will be due on Maturity Date.  If, on 07/01/2050, the Borrower still owes any other amounts under the Note, Security Instrument, this or any prior Modification, the Borrower will pay these amounts in full on the Maturity Date.

5.    The Borrower will comply with all other covenants, agreements, and requirements of the Note and the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

6.    Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Modification, the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

7.    Borrower(s) further acknowledges and agrees to further release, discharge, and accord the Lender, and its agents, attorneys, officers, directors, shareholders, subsidiaries, affiliates, successors, heirs, personal representatives and assigns, from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses and claims of every kind, nature and character whatsoever, whether in law or in equity, accrued or unaccrued, known or unknown, liquidated or unliquidated, certain or contingent, which it ever had, against the Lender.

8.    Each individual executing this Agreement warrants that she/he has actual authority to execute this Agreement, that she/he has had the opportunity to have legal counsel review and explain the provisions of this Agreement and that she/he has read this Agreement in full and understands its contents prior to signing said Agreement.

[To be signed and dated by all borrowers, endorsers, guarantors, sureties, and other parties signing the Balloon Note and Security Instrument.]

_Thomas R Rering_                                             _6 29 10_

THOMAS R RERING - Borrower                                    Date

INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____ _OH_ _____, COUNTY OF ____ _Clermont_ ____ :

Before me a Notary Public in and for said County and State personally appeared THOMAS R RERING, who are personally known to me or have produced driver's license identification and who did take an oath and who executed the foregoing conveyance to Fifth Third Mortgage Company and severally acknowledged the execution thereof to be his/her free act and deed for the uses and purposes therein mentioned. _____
IN WITNESS WHEREOF, I have hereunto affixed my name and official seal this _2 9_ day of _June_ ,
20_10_ .

Notary Public
My Commission Expires ___ _1/30/201_ __

TORE A. RAMUNDO
Notary Public, State of Ohio
My Commission Expires
January 30, 2013

DO NOT WRITE BELOW THIS LINE.  FOR FIFTH THIRD USE ONLY
CORPORATE ACKNOWLEDGEMENT

FIFTH THIRD MORTGAGE COMPANY                    _____ (Seal)

STATE OF OHIO, COUNTY OF HAMILTON:

Before me, a Notary Public in and for said County and State personally appeared Fifth Third Mortgage Company by _Gregory J. Hortemiller_ its _ASST. VICE PRESIDENT_ , the individual who executed the foregoing instrument and acknowledged that she/he did read the same and did sign the foregoing instrument and that the same is her/his free act and deed and the free act and deed of Fifth Third Mortgage Company.
IN WITNESS WHEREOF, I have hereunto affixed may name and official seal this _1ss_ day of
_July_ , 20_10_ .

_Donna M. Hardyman_
Notary Public
My Commission Expires _12/11/2013_



Donna  M. Hardyman
Notary Public, State of Ohio
My Commission Expires 12-11-2013

# Exhibit F



| NIC Home | Institution Search | USBA Search | Top 50 HCs |
|---|---|---|---|
| BHCPR Peer Reports | FAQ | | |

**Institution History for**  TYLERSVILLE SQUARE BRANCH (788876)

4 institution history record(s) found.                    < Previous  Page  1        Next >

| Event Date | Historical Event |
|---|---|
| 1888-01-01 | ENTERPRISE FEDERAL SAVINGS AND LOAN ASSOCIATION located at 117-119 MILL ST, LOCKLAND, OH was established as a Savings & Loan Association. |
| 1994-10-01 | ENTERPRISE FEDERAL SAVINGS AND LOAN ASSOCIATION was **renamed** to ENTERPRISE FEDERAL SAVINGS BANK and **moved** to 7810 TYLERSVILLE SQUARE DRIVE WEST CHESTER, OH and **changed** from Savings & Loan Association to Federal Savings Bank. |
| 1999-05-15 | ENTERPRISE FEDERAL SAVINGS BANK was **acquired** by FIFTH THIRD BANK. |
| 1999-05-15 | ENTERPRISE FEDERAL SAVINGS BANK was **renamed** to TYLERSVILLE SQUARE BR and **moved** to 7820 TYLERSVILLE SQUARE DRIVE WEST CHESTER, OH and **became** a branch of FIFTH THIRD BANK. |

NIC Home  |  FAQ  |  Help  |  Contact Us

# Exhibit G

LS&R No.: 
Loan No.: ████



200600041622
Filed for Record in
CLERMONT COUNTY, OH
CAROLYN GREEN
12-04-2006 At 12:52 P.M.
ASSIGN          36.00
OR Book 2026 Page 1876 - 1878

### ASSIGNMENT OF MORTGAGE

3

**BK: 2026 PG: 1876**

KNOW ALL MEN BY THESE PRESENTS, that the undersigned **Fifth Third Bank sbmt Enterprise Federal Savings Bank** whose address is 7810 Tylersville Square Drive, West Chester, OH 45069, does hereby sell, assign, transfer and set over unto **Fifth Third Mortgage Company**, whose address is c/o Fifth Third Bank, Madisonville Operations Center, Maildrop 1MOC20, 38 Fountain Square Plaza, Cincinnati, OH 45202, a certain mortgage from Thomas R. Rering, unmarried, to Enterprise Federal Savings Bank, dated February 5, 1999, recorded March 10, 1999, in Volume 1186, Page 95, in the office of the Clermont County Recorder, together with the Promissory Note secured thereby and referred to therein; and all sums of money due and to become due thereon, and secured by the following real estate:

PIDN: 41-41-43.002

**See attached legal description.**

PROPERTY ADDRESS: 592 SONNY LANE, CINCINNATI, OH  45244

BK: 2026 PG: 1877

IN WITNESS WHEREOF, Fifth Third Bank sbmt Enterprise Federal
Savings      Bank      has      set      its      hand      this
_28th_ day of _November_, 2006.

Fifth Third Bank sbmt
Enterprise Federal Savings Bank

By: _____
Brad Griffith
Default Manager

STATE OF  _OHIO_
                                    SS.
COUNTY OF  _HAMILTON_

Before me, a Notary Public in and for said County and State,
personally appeared _Brad Griffith_, _Default Manager_,
of Fifth Third Bank sbmt Enterprise Federal Savings Bank who
acknowledged the signing thereof to be their free and voluntary
act and deed and the free act and deed of said corporation.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name, and
affixed my official seal on the day and year last aforesaid.

_____
Notary Public

This instrument was prepared by:

ANITA L. MONTGOMERY
Notary Public, State of Ohio
My Commission Expires
August 1, 2011

LERNER, SAMPSON & ROTHFUSS
A Legal Professional Association
P.O. Box 5480
Cincinnati, OH 45201-5480

BK: 2026  PG: 1878

LEGAL DESCRIPTION

Situate in the Township of Union, in the County o Clermont and State of Ohio and being
all of Lot No. 2 of Mt. Forest Subdivision a plat on plan of which subdivision is recorded
in Plat Book J, Page 26 of the Recorder's Office of Clermont County.

# Exhibit H

Instrument                BOOK  PAGE
201400005553
Filed for Record in
CLERMONT COUNTY, OH
DEBORAH HALL CLEPPER
03-27-2014 At 09:24 am.
ASSIGN                28.00
OR BOOK    2508 PAGE   503 - 503

201400005553
Electronic Filing
From: Ingeo Systems
Thru: ERX

Parcel Identifier No: **41-41-43.002**

### ASSIGNMENT OF MORTGAGE

Loan Number: ▇▇▇▇▇

    For Value Received, the undersigned holder of a Mortgage, **FIFTH THIRD MORTGAGE COMPANY** (herein "Assignor") whose address is **5001 KINGSLEY DRIVE MD 1MOBB1 CINCINNATI, OH 45227** , does hereby grant, sell, assign, transfer, and convey, unto **FIFTH THIRD BANK, AN OHIO BANKING CORPORATION** (herein "Assignee"), whose address is **5001 KINGSLEY DRIVE 1MOBBW, CINCINNATI, OH 45227** , a certain Mortgage dated **02/05/1999**, and recorded on **03/10/1999**, made and executed by **THOMAS R RERING, UNMARRIED** , to and in favor of **ENTERPRISE FEDERAL SAVINGS BANK** upon the following described property. Such Mortgage having been given to secure payment of **$76300.00** which Mortgage is of record in Book, Volume or Liber No. **1186** , at Page **95** , as Document No. **9900010370** , of the Records of Clermont County, State of **OH** , together with the obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

    Legal Description: **SITUATED IN THE TOWNSHIP OF UNION, IN THE COUNTY OF CLERMONT AND STATE OF OHIO AND BEING ALL OF LOT NO.2 OF MT. FOREST SUBDIVISION A PLAT ON PLAN OF WHICH SUBDIVISION IS RECORDED IN PLAT BOOK J, PAGE 26 OF THE RECORDER'S OFFICE OF CLERMONT COUNTY.**
    TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

    IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on **03/26/2014** .

**FIFTH THIRD MORTGAGE COMPANY**

*(signature)*

RANDY JONES, Vice-President

STATE OF OH
COUNTY OF Hamilton } S.S.

On **03/26/2014** , before me **KRISTOPHER W. KLEEHAMER** , Notary Public, personally appeared **RANDY JONES** , **Vice-President** personally known to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person or entity upon behalf of which the person acted, executed the instrument.
  Witness my hand and official seal.

*(signature)*

KRISTOPHER W. KLEEHAMER
My Commission Expires: **05/27/2014**

*(notary seal)*
Kristopher W. Kleehamer
Notary Public, State of Ohio
My Commission Expires 05-27-2014

Prepared By: **LAUREN HEDGES**

***Send All Notices to Assignee***

| | |
|---|---|
| RECORDING REQUESTED BY: | AND WHEN RECORDED MAIL TO: |
| **FIFTH THIRD BANK** | **FIFTH THIRD BANK** |
| **LAUREN HEDGES** | **LIEN RELEASE** |
| **5001 KINGSLEY DRIVE** | **38 FOUNTAIN SQUARE PLAZA** |
| **MD# 1MOBB1** | **MD# 1MOBB1** |
| **CINCINNATI OH 45227** | **CINCINNATI, OH 45273-9276** |

# Exhibit I



**PARID: 414143.002.**
**RERING THOMAS**                                                    **592 SONNY LN**

**Appraised Value (100%)**

| | |
|---|---|
| Land Value | $33,000 |
| Building Value | $100,000 |
| Total Value | $133,000 |
| CAUV | $0 |

**Assessed Value (35%)**

| | |
|---|---|
| Land Value | $11,550 |
| Building Value | $35,000 |
| Total Value | $46,550 |
| CAUV | $0 |

Left navigation:
- Profile
- Sales
- Residential
- Commercial
- Outbuildings
- Permits
- ▶ Values
- Value History
- Tax Summary
- Tax Detail
- Tax History
- Payment History
- Assessment
- Manufactured Home
- **Proposed Levies for May 6, 2014 Election**
- Levies Passed in 2013
- Sketch
- Photo
- Tax Map
- Surveys
- Property Recap Report
- Plat Viewer
- Recorders Info

CURRENT RECORD

1 of 1

Return to Search Results

Neighborhood Sales

REPORTS
Mailing List
Property Record Card
Current Tax Bill

Printable Summary

Printable Version

Land Use Codes

Tax Codes, Descriptions and Calc Formula

Project # Assessment Descriptions

Data Copyright Clermont County Auditor Office [Disclaimer]  [Privacy Policy]  Last Updated: 23/Apr/2014

Site Design Copyright 1999-2012 Tyler Technologies. All rights reserved.

B6D (Official Form 6D) (12/07)

# Exhibit J

In re **Thomas Robert Rering**,                     Case No. _____

                     Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor",include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. <br><br>**Ally (fka GMAC)** <br>P O Box 380902 <br>Bloomington, MN 55438-0902 | | | 3/20/13 <br><br>Finance Purchase <br><br>2006 BMW 750 i (78,000 miles) | | | | | |
| | | | Value $        12,314.00 | | | | 12,000.00 | 0.00 |
| Account No. 2014cve0473 <br><br>**Fifth Third Bank** <br>38 Fountain Square Plaza <br>Cincinnati, OH 45202 | | | 3/10/99 <br><br>1st Mtg <br><br>592 Sonny Lane | | | | | |
| | | | Value $        129,000.00 | | | | 72,000.00 | 0.00 |
| Account No. ▉▉▉▉ <br><br>**Harley Davidson** <br>P O Box 22048 <br>Carson City, NV 89721-2048 | | | 7/2/11 <br><br>Finance Purchase <br><br>2011 Harley Davidson Fat Boy | | | | | |
| | | | Value $        11,650.00 | | | | 12,000.00 | 350.00 |
| Account No. <br><br>**Levy & Associates** <br>attorney for Harley Davidson <br>4645 Executive Drive <br>Columbus, OH 43220 | | | NOTICE ONLY | | | | | |
| | | | Value $        0.00 | | | | 0.00 | 0.00 |

__1__ continuation sheets attached

Subtotal <br> (Total of this page)        96,000.00    350.00

B6D (Official Form 6D) (12/07) - Cont.

In re   **Thomas Robert Rering** _____ ,   Case No. _____
                                                    Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. <br><br> **Park National Bank** <br> **1075 Nimitzview Drive** <br> **Cincinnati, OH 45230** | | | **4/13/99** <br><br> **2nd Mtg** <br><br> **592 Sonny Lane** <br><br> Value $          **129,000.00** | | | | **12,000.00** | **0.00** |
| Account No. **CJ07012258 *See Below** <br><br> **State of Ohio** <br> **Department of Taxation** <br> **Attn: Bankruptcy Division** <br> **P O Box 530** <br> **Columbus, OH 43266-0030** | - | | **2007 to current** <br> **certified judgment liens** <br> **592 Sonny Lane** <br> **\* CJ12005346 \*CJ08007445** <br> **\*CJ08007820 \*CJ10020289** <br> **\*CJ10020290 \*CJ10021403** <br> Value $          **129,000.00** | | | | **3,000.00** | **0.00** |
| Account No. **2014CVF00073** ▉ <br><br> **Tribble Refrigeration** <br> **5679 Buckwheat Road** <br> **Milford, OH 45150** | - | | **3/19/14** <br><br> **certified judgment lien from business debt** <br><br> **592 Sonny Lane** <br><br> Value $          **129,000.00** | | | | **2,130.00** | **0.00** |
| Account No. <br><br> **Edwin Vardiman** <br> **Atty for Tribble Refrigeration** <br> **7416 Jager Court** <br> **Cincinnati, OH 45230** | - | | **Notice Only** <br><br><br> Value $                  **0.00** | | | | **0.00** | **0.00** |
| Account No. <br><br><br><br> | | | <br><br><br> Value $ | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | Subtotal <br> (Total of this page) | **17,130.00** | **0.00** |
|---|---|---|---|
| | Total <br> (Report on Summary of Schedules) | **113,130.00** | **350.00** |

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                                                                                           Best Case Bankruptcy

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| **Thomas Robert Rering** | : | **Case No.: 14-11647** |
| | : | **Chapter 7** |
| Debtor(s). | : | **Judge Jeffery P. Hopkins** |
| | : | * * * * * * * * * * * * * * * * * * * * * * |
| | : | |
| | : | |

### Exhibit K

_____

**RELIEF FROM STAY/ADEQUATE PROTECTION
EXHIBIT AND WORKSHEET в REAL ESTATE
(For use as required by LBR 4001-1(a)(1))**

_____

Real property address which is the subject of this motion: 592 Sonny Lane, Cincinnati, OH 45244

**DEBT/VALUE REPRESENTATIONS:**

Total indebtedness of the debtor(s) at the time of filing the motion for relief from stay
(not to be relied upon as payoff quotation):                        $        72,480.76

Movant's estimated market value of the real property:                        $        133,000.00

Source of the estimated valuation:    the Clermont County Auditor's tax record


**STATEMENT OF ARREARAGE:**

(1) As of petition filing date:                        $        0.00

  Amounts paid after the date of filing to be applied to the prepetition default:    $        0.00

(2) Postpetition:                        $        6,382.89

(3) Monthly payment amount:                        $        709.21

 (4) Date of Last Payment:

 (5) Amount of Last Payment                        $

# of payments due postpetition          9          (through payment due May 13, 2014)

# of payments received postpetition        0

# of payments in default postpetition        9

Total amount of postpetition payments currently in default                        $        6,382.89

  + Postpetition late charges                        $        0.00

  + Other postpetition charges (describe)                        $        0.00

    Foreclosure title work

14-010480_JYZ

| | | |
|---|---|---|
| Filing fee | _____ | |
| Skip trace | _____ | |
| Document acquisition costs | _____ | |
| Service Process server | _____ | |
| Escrow Shortage (Amounts advanced on behalf of Debtor(s) | _____ | |
|     Hazard Insurance | _____ | Dates:_____ |
|     Taxes | _____ | Dates:_____ |
| Appraisal | _____ | |
| BPO charges | _____ | |
| Property Inspection | _____ | |
| Other (specify) | _____ | |

=      Total Postpetition Arrearage      $ _____ 6,382.89

**OTHER LOAN INFORMATION:**

Date of the loan     2/5/99 _____

Current interest rate     5.000% _____

Money paid to and held by the mortgagee but not applied to the loan $0.00; if held in the form of checks, balance of such checks $0.00, and identity of holder of the checks.

**REQUIRED ATTACHMENTS TO MOTION:**

(a)      In a Chapter 13 case, a postpetition payment history;

(b)      In all cases, copies of documents which indicate movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the real estate mortgage should be attached. The mortgage should bear date stamps reflecting the recording date together with recording references reflecting the recordation of the mortgage with the appropriate county official. If the subject property is registered land, movant shall attach a copy of the registered land certificate or other documentation reflecting that the mortgage was memorialized as a lien on the registered land certificate.

This Exhibit and Worksheet was prepared by:

/s/ James E. Tebbutt
_____
James E. Tebbutt (0084830)
Stacey A. O'Stafy (0070386)
Mary E. Krasovic (0085380)
David B. Bokor (0061515)
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH  43216-5028
Telephone: 614-220-5611
Fax: 614-627-8181

14-010480_JYZ

Attorneys for Creditor
The case attorney for this file is James E.
Tebbutt.
Contact email is jet@manleydeas.com

14-010480_JYZ